The STATE of Ohio, Appellee,

v.

MORALES, Appellant.

[Cite as *State v. Morales*, 153 Ohio App.3d 635, 2003-Ohio-4200.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020604.

Decided Aug. 8, 2003.

636

Michael K. Allen, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Stephen J. Wenke, for appellant.

GORMAN, Judge.

{¶ 1} The defendant-appellant, Orlando Morales, appeals from the judgment of the trial court adjudicating him a sexual predator. In his four assignments of error, he contends that (1) the retroactive application of R.C. 2950.09 violates both the Ex Post Facto Clause of the United States Constitution and Section 28, Article II of the Ohio Constitution; (2) R.C. 2950.09 violates the Double Jeopardy Clause of the United States Constitution; (3) R.C. 2950.09 is unconstitutionally vague in violation of the Fourteenth Amendment; and (4) the sexual-predator adjudication was against the manifest weight of the evidence. We overrule each assignment of error.

{¶ 2} In 1985, Morales pleaded guilty and was convicted of two counts of rape in violation of R.C. 2907.02. Morales, at age twenty-four, had forced his two stepdaughters, ages ten and twelve, to perform fellatio on him at different times over a period of months. One stepdaughter was hearing-impaired and a mute. The trial court sentenced him to two concurrent indefinite prison terms of ten to twenty-five years.

{¶ 3} On September 5, 2002, the trial court ordered Morales to appear for a sexual-offender-classification hearing. At the conclusion of the hearing, the trial court adjudicated him a sexual predator.

{¶ 4} We overrule Morales's constitutional challenges to R.C. 2950.09 upon the authority of *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, certiorari denied (1999), 525 U.S. 1182, 119 S.Ct. 1122, 143 L.Ed.2d 116, and *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342. These cases have already addressed and rejected each of his arguments.

{¶ 5} In his sole remaining assignment of error, Morales argues that his adjudication as a sexual predator was against the manifest weight of the evidence and failed to conform to the model procedure established in *State v. Eppinger* (2001), 91 Ohio St.3d 158, 743 N.E.2d 881. We disagree.

{¶ 6} A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). Sexual-offender-classification hearings are civil in nature. *State v. Gowdy* (2000), 88 Ohio St.3d 387, 398, 727 N.E.2d 579. The state has the burden to prove by clear-and-convincing evidence that the offender is a sexual predator. See R.C. 2950.09(B)(3); *Eppinger*, supra, 91 Ohio St.3d at 165, 743 N.E.2d 881. "Clear and convincing evidence" is " 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. [The degree of proof] is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.' " Id. at 164, 743 N.E.2d 881, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118. See, also, *State v. Crooks*, 152 Ohio App.3d 294, 2003-Ohio-1546, 787 N.E.2d 678, ¶ 13.

{¶ 7} Morales argues that the state's expert witness offered conclusive evidence through clinical test results—specifically, the results of the Static–99 test—that he was not likely to reoffend. Nancy Schmidtgoessling, Ph.D., who administered the psychological testing to Morales, testified that the Static–99 test was developed from research and studies of sexual offenders using criteria "that seemed to reliably predict those people who would reoffend * * *." She described the test in equivocal terms, however, as "the best instrument of its type, sort of." She testified that, according to the Static–99 test results, Morales's chances of recidivism were six percent within five years, seven percent within ten years, and seven percent within fifteen years. She described these percentages as "quite a low risk compared to others."

{¶ 8} In determining whether an offender convicted of a sexually oriented offense is a sexual predator, the trial court must consider the evidence under the legislative guidelines in R.C. 2950.09(B)(2). The weight, if any, to be given to the statutory factors is within the trial court's discretion. *Crooks*, supra, at ¶ 14, citing *State v. Thompson* (2001), 92 Ohio St.3d 584, 587, 752 N.E.2d 276. In making its findings, the trial court is not required to list the criteria but is required to consider all the criteria and factors under the guidelines in R.C. 2950.09(B)(2). *Cook*, supra, 83 Ohio St.3d at 426, 700 N.E.2d 570.

{¶ 9} Morales argues that the Static–99 test results conclusively refuted the trial court's finding, or any finding for that matter, that he was "likely to engage in the future in one or more sexually oriented offenses." We reject the proposition that recidivism test results are binding upon the trial court. The court must consider all the evidence and circumstances on a case-by-case basis, employing the guidelines of R.C. 2950.09(B)(2). As in the trial of other civil cases, the trier of fact is entitled to decide what weight should be given to the testimony of any expert witnesses. See *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 92, 652 N.E.2d 671.

{¶ 10} We are in full agreement with the Third Appellate District that Static–99 test results, and their evaluation by expert testimony, should not be the sole basis for a sexual-predator adjudication. See *State v. Robertson*, 147 Ohio App.3d 94, 2002-Ohio-494, 768 N.E.2d 1207, ¶ 39. The decision of the Eighth Appellate District in *State v. Youlten*, 151 Ohio App.3d 518, 2003-Ohio-430, 784 N.E.2d 768, with which we also generally agree, can be distinguished. In *Youlten*, the appellate court reversed the sexual-predator adjudication in part because of the low category of reoffending assessed under the Static–99 test, but also because the trial court relied on the historical evidence at the time of the crime without even considering the more recent psychological evidence. Here, the trial court expressly made clear that it had considered both.

{¶ 11} It is undisputed that Morales was convicted of committing sexually oriented offenses. Although the judge at the classification hearing was not the judge who had sentenced Morales for the underlying offenses, the court considered (in addition to the clinical evaluation and Dr. Schmidtgoessling's testimony) the indictment, the transcript of the grand-jury proceedings, and Morales's criminal record. In finding that Morales was a sexual predator, the trial court related facts from the record to the legislative guidelines of R.C. 2950.09(B)(2). The trial court expressly stated that it considered (1) the ages of the victims in contrast to Morales's age, (2) that the abuse occurred to both over a period of several months, (3) that one of the victims was hearing-impaired and mute, rendering her more vulnerable, (4) that Morales displayed cruelty by threatening to beat the victims with a belt if they did not comply with his requests, (5) that

Morales used his position of trust as a stepfather to commit the sexually oriented offenses, (6) that Morales had a prior conviction in 1984 for child abuse and was "under a form of community control for child abuse" when he committed the offenses in question, and (7) that Dr. Schmidtgoessling had expressed her personal reservations about Morales's reoffending even though he did not meet the clinical diagnostic criteria of a pedophile.

{¶ 12} To determine whether the trial court's finding of the offender's likelihood of recidivism is supported by clear-and-convincing evidence, an appellate court must conduct its own review of the "evidence in the transcripts, victim impact statements, presentence investigation reports, prior history of arrests and convictions, age, etc., presented at the sexual offender classification hearing with respect to R.C. 2950.09(B)(2) factors." *Eppinger,* supra, 91 Ohio St.3d at 162, 743 N.E.2d 881. Since the trial court is vested with broad discretion in evaluating the evidence of recidivism under the legislative guidelines in R.C. 2950.09(B)(2), an appellate court must be deferential to the trial court's findings unless they are clearly erroneous. See *Cook,* supra, 83 Ohio St.3d at 426, 700 N.E.2d 570.

{¶ 13} In this case, the trial court was not required to slavishly adhere to the Static–99 test results to the exclusion of other relevant evidence in the record. This is particularly true, since Dr. Schmidtgoessling equivocated as to whether Static–99 test results could accurately predict an individual's risk of reoffending. She testified, "It [Static–99] is simply a statement about how groups of people perform. So you really can't come up with an individual prediction." She also testified that, although Static–99 is currently the best instrument for predicting future sexual recidivism, "there is a strong opinion among people in the field that this instrument probably underrepresents the risk of reoffending because it only concentrates on the people who have already offended with some comparison to the general population." She concluded that the Static–99 test may "oversimplify the issue of prediction."

{¶ 14} We hold that the trial court's findings and reasons stated in its judgment entry faithfully conform to the *Eppinger* model. We further hold that there is clear-and-convincing evidence in the record to support the trial court's adjudication of Morales as a sexual predator.

{¶ 15} Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

DOAN, P.J., and WINKLER, J., concur.